IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

APEX COLLISION CENTER CLOVIS, LP,

    Plaintiff,

v.                                                              2:21-cv-00841-DHU-JHR

SECURITY NATIONAL INSURANCE COMPANY,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Security National Insurance Company's Motion for Summary Judgment (Doc. 24). Plaintiff Apex Collision Center Clovis, LP, responded in opposition (Doc. 28), to which Defendant replied (Doc. 32). The Court, having carefully reviewed the motion, briefs, evidence, and the parties' arguments, concludes that the motion will be **DENIED**.

## BACKGROUND

### I. Plaintiff's Insurance Claim and Filing Suit

The following facts are either undisputed or construed in the light most favorable to the summary judgment nonmovant for the purpose of determining the pending motion for summary judgment. These facts are not to be construed as findings of fact by the Court for the purpose of determining the merits of Plaintiff's claims or Defendant's defenses.

Plaintiff owns and operates a collision center at 620 East Llano Estacado Blvd., Clovis, New Mexico, 88101. Defendant's Statement of Material Facts Not in Genuine Dispute ("Def.'s SOMF") ¶ 4. On May 25, 2019, a tornado caused damage to Plaintiff's business. *Id.* ¶ 5. On the

1

date of loss in question, the business was covered by an insurance policy issued by Defendant (the "Policy"). *Id.* ¶ 4.

Plaintiff made a timely claim on its insurance policy on or about May 28, 2019. *Id.* ¶ 6. The Policy covers certain physical damage at covered locations and related losses for business interruption. *Id.* ¶ 1. The Policy's property damage provision provides for recoverable depreciation and recovery of business income loss in the event of physical damage. *Id.* ¶ 2.

Plaintiff made a claim under the Policy for property damage and business interruption loss resulting from the May 25, 2019 event. *Id.* ¶ 7. Plaintiff and Defendant reached an agreement on the property damage portion of Plaintiff's claim. *Id.* ¶ 8. The only coverage dispute at issue is the dispute over the alleged business income loss as a result of the property damage. *Id.* ¶ 9.

Defendant retained Leo & Dutton to review the loss of business income claim and documentation. *Id.* ¶ 11. On May 28, 2019, Leo & Dutton contacted Apex and requested the following information to review the claim:

(1) Monthly Income Statements (Profit and Loss) from January 2017 through May 2019 separated by individual month;

(2) payroll records for April and May 2019 separated by individual pay period;

(3) Monthly 1099 wages/commissions for April and May 2019 separated by individual pay period;

(4) a copy of the 2018 filed federal tax return, including all accompanying schedules and statements; and

(5) any other information Apex believes will aid in the analysis. *Id.* ¶ 12.

On July 24, 2019, Priscilla Huffer of Leo & Dutton contacted Apex a second time requesting the information, and Apex responded on July 25, 2019 that the business loss

could not be evaluated until the buildings were repaired and the business was restored. *Id.* ¶ 13. On February 5, 2020, Leo & Dutton followed up again on the status of the production of the financial records. *Id.* ¶ 17. On February 14, 2020, Leo & Dutton followed up with Apex regarding the financial records. *Id.* ¶ 18. On March 24, 2020, Leo & Dutton followed up with Apex regarding the financial records. *Id.* ¶ 19. On March 26, 2020, Apex provided financial statements instead of the requested tax returns and stated "tax returns would not provide a true picture of Apex Collision Center's income; because Apex operates several businesses." *Id.* ¶ 20.

On April 1, 2020, Leo & Dutton notified Apex regarding the deficiency of the documents and requested the information needed to complete the review. *Id.* ¶ 21. On April 15, 2020, Allen Jones, the Complex and Specialty Claims Adjuster with AmTrust North America, which is the company that handles SNIC's claims, corresponded with Apex regarding the claim and informed Apex that additional documentation was needed to review the business income claim. *Id.* ¶ 22. On May 15, 2020, Allen Jones followed up with Apex and requested the financial information previously requested to conclude the business income claim. *Id.* ¶ 23. On June 15, 2020, Allen Jones followed up with Apex and requested the financial information previously requested to conclude the business income claim. *Id.* ¶ 24. On July 15, 2020, Allen Jones followed up with Apex and requested the financial information previously requested to conclude the business income claim. *Id.* ¶ 25. On August 12, 2020, Allen Jones followed up with Apex and requested the financial information previously requested to conclude the business income claim. *Id.* ¶ 26. On September 14, 2020, Allen Jones followed up with Apex and requested the financial information previously requested to conclude the business income claim. *Id.* ¶ 27. On October 14, 2020, Allen Jones followed up with Apex and requested the financial information previously

requested to conclude the business income claim. *Id.* ¶ 28. In October 2020, Plaintiff's Chief Executive Officer and President, Darin Halbleib, provided an affidavit ("Halbleib Affidavit") from the insured claiming $470,000.00 in loss of business income based on his knowledge of the business and the profession.[1] *Id.* ¶ 14; *see also* Plaintiff's Statement of Material Facts ("Plf.'s SOMF") ¶ 23.

On November 17, 2020, Allen Jones followed up with Apex and requested the financial information previously requested to conclude the business income claim. Def.'s SOMF ¶ 29. On November 23, 2020, Leo & Dutton requested the following information from Apex:

a. How the lost profits were computed by the insured;

b. How the lost gross revenue associated with each one of the lost profit dollar amounts were computed. *Id.* ¶ 30.

On December 15, 2020, Allen Jones followed up with Apex and requested dates and time to hold a telephone conference to discuss the business income claim. *Id.* ¶ 31. On December 17, 2020, Allen Jones followed up with Apex and requested the financial information previously requested to conclude the business income claim. *Id.* ¶ 32. On January 19, 2021, Allen Jones followed up with Apex and requested the financial information previously requested to conclude the business income claim. *Id.* ¶ 33. On January 22, 2021, Allen Jones corresponded with counsel for Apex and requested documentation to support the $470,000.00 loss of business income claim. *Id.* ¶ 34. The January 22, 2021 correspondence also stated:

---

[1] It is not clear from the record whether this affidavit was provided in October 2019 or October 2020. Mr. Jones provided an affidavit in this matter ("Jones Affidavit"). *See* Doc. 24-2 at 1-6. The Jones Affidavit states that the Halbleib Affidavit was provided in October 2020, and the Halbleib Affidavit is dated October 2020. However, the Jones Affidavit also describes the Halbleib Affidavit as having been provided between July 2019 and February 2020. The Court assumes for purposes of this Order, without deciding, that the Halbleib Affidavit was provided in October 2020.

> Apex is asserting that during hail events that their business revenue opportunities increase significantly. Apex provided details on how they arrived at their $470,000.00 Lost Revenue demand. Apex says that if not for the damages to their buildings, Apex would have potentially serviced an additional 188 hail damaged vehicles with a net revenue of $2500 per vehicle to arrive at the $470,000.00 demand. Financial records obtained by our accountant, Leo & Dutton, paint a different picture of the financial data …
>
> Based on the data we have obtained, combined with the Leo & Dutton Business Income Schedule we do not believe that Apex suffered a Business Income Loss. Leo & Dutton's report (Attached) shows growth over the previous years, including the effect of the 2018 hail event …
>
> At this time, we request you submit any additional financial documents that can substantiate your client's position regarding their lost revenue.
>
> To the extent you disagree with this decision, I encourage you to provide any information or documents you believe are necessary to ensure that Security National Insurance Company makes a fully informed decision regarding your claim …

Doc. 24-4 at 22-23 (Def.'s Exhibit A-25).

On May 11, 2021, Apex sent a demand and pre-suit notice letter to SNIC for its claim for business income loss. Plf.'s SOMF ¶ 25. On June 9, 2021, Allen Jones responded to Apex's demand letter:

> Please be advised that Security National stands by its determination set forth in the enclosed January 22, 2021 correspondence - specifically, that Apex has not provided sufficient financial documents that support its claim for a Business Income Loss.
>
> Security National's decision is based off the report generated by Certified Public Accountants at Leo & Dutton, PLLC, who concluded that there is no evidence supporting Apex's claim of an approximate 203% sales growth over prior years. Leo & Dutton did conclude that, in the immediate 2019 months prior to the hailstorm incident, Apex's average sales growth was approximately 8.7% over prior year 2018 sales. In comparison, during the impacted claimed months of May through October 2019, Apex's actual sales growth was approximately 114% over prior year 2018 sales. In sum, the financial data submitted to date does not indicate that Apex suffered a Business Income Loss.

5

> Note also that Leo & Dutton found no evidence that Apex's sales increased during a prior hail-storm event that occurred in the same area on April 29, 2018. Leo & Dutton's report is attached for your review.
>
> Please provide any additional financial data or documents that you believe support Apex's Business Loss Claim.

Doc. 28-5 at 1 (Plf.'s Ex. D).

On July 20, 2021, Apex filed suit against SNIC in the 9th Judicial District Court for Curry County. Def.'s SOMF ¶ 36. Apex asserts that it is entitled to payment for business income loss and asserts causes of action for breach of contract, prompt payment of claims, and bad faith. *Id.* ¶ 37. Apex seeks compensatory damages, attorneys' fees, punitive damages, pre-judgment and post-judgment interest, and all other relief to which Plaintiff is entitled. *Id.* ¶ 38. SNIC timely removed the case to the United States District Court for New Mexico on August 26, 2021. *Id.* ¶ 39.

## II. The Insurance Policy

The Policy is comprised of more than 300 pages. *See* Doc. 24-3 at 1-305 (Def.'s Exhibit A-1). The Policy identifies itself as a "Commercial Policy" that consists of "(1) Declarations, (2) Common Policy Conditions, (3) One or More Coverage Parts, and (4) Applicable Forms and Endorsements." Doc. 24-3 at 19 (Def.'s Exhibit A-1). The parties refer to several provisions of the Policy. Defendant identifies three relevant policy sections, Doc. 32 at 5:

1. Building and Personal Property Coverage Form, ISO Commercial Property Form Number CP 00 10 10 12, *see* Doc. 24-3 at 186-202 (Def.'s Exhibit A-1);

2. Business Income and Extra Expense Form, ISO Commercial Property Form CP 00 30 10 12, *see* Doc. 24-3 at 202-211 (Def.'s Exhibit A-1); and

3. Commercial Property Conditions, ISO Commercial Property Form CP 00 90 07 88, *see* Doc. 24-3 at 212-213 (Def.'s Exhibit A-1).

The Commercial Property Conditions form states:

> This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

Doc. 24-3 at 212. Section D of the Commercial Property Conditions form, immediately below the above statement and entitled "Legal Action Against Us," provides:

> No one may bring a legal action against us under this Coverage Part unless:
> 1. There has been full compliance with all of the terms of this Coverage Part; and
> 2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

*Id.* The Business Income and Extra Expense Form states:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

Doc. 24-3 at 202 (Def.'s Exhibit A-1).

Finally, the Policy contains a Commercial Property Expanded Coverage endorsement. *See* Doc. 24-3 at 59. The Schedule of Coverages for the Commercial Property Expanded Coverage endorsement lists four sections: I) Expanded Property Coverage, II) Expanded Inland Marine Coverage, III) Expanded Crime Coverage, and IV) Expanded Business Income Coverage. *Id.* However, there is also a Section V on the last page of the Commercial Property Expanded Coverage endorsement, which states, in relevant part,

> D. ADDITIONAL CONDITIONS
> The following conditions apply in addition to the Additional Conditions in the Building and Personal Property Coverage Form or the Commercial Property Conditions Form.
>     1. Conflict Of Provisions

7

> When not in conflict with the provisions of this endorsement, all of the conditions of the policy to which this endorsement is attached, shall apply.

Doc. 24-3 at 76. Having reviewed the factual background, the Court turns now to the legal framework governing this matter.

## LEGAL FRAMEWORK

### I. Summary Judgment Legal Standard

A party is entitled to a summary judgment "if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hamric v. Wilderness Expeditions, Inc.*, 6 F.4th 1108 (10th Cir. 2021) (quoting Fed. R. Civ. P. 56(a)). "A fact is material if it can have an impact on the outcome of the lawsuit and genuine if a rational jury could find in favor of the non-moving party based on the evidence presented." *New Mexico Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Servs.*, 994 F.3d 1166, 1171 (10th Cir. 2021). The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact. *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 971 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)).

"If the moving party does not bear the burden of proof at trial on a dispositive issue, that party may make such a showing simply by indicating to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id*. "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial." *Id*. The district court's role in analyzing a motion for summary judgment is to simply "assess whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Sierra Club v. El Paso Gold Mines, Inc.*, 421 F.3d 1133, 1150 (10th Cir. 2005). "On summary judgment the inferences to be

drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

## II. Insurance Policy Interpretation

In diversity cases, the propriety of summary judgment will be evaluated using the Federal Rules of Civil Procedure but with references to the state's substantive law. *Am. Mech. Sols., L.L.C. v. Northland Process Piping, Inc.*, 184 F. Supp. 3d 1030, 1060 n.13 (D.N.M. 2016) (quoting *C.F. Braun & Co. v. Oklahoma Gas & Elec. Co.*, 603 F.2d 132, 133 n.1 (10th Cir. 1979)) (internal citation omitted).

Under New Mexico law, "[t]he obligation of an insurer is a matter of contract law and must be determined by the terms of the insurance policy." *Miller v. Triad Adoption & Counseling Servs., Inc.*, 2003-NMCA-055, ¶ 8, 133 N.M. 544. "Generally, the goal of contract interpretation is to ascertain the intentions of the contracting parties." *Gallegos v. Pueblo of Tesuque*, 2002-NMSC-012, ¶ 30, 132 N.M. 207 (quoting *Ponder v. State Farm Mut. Auto. Ins. Co.*, 2000-NMSC-033, ¶ 11, 129 N.M. 698 (internal quotation marks omitted)). "The clauses in the policy must be construed as intended to be a complete and harmonious instrument designed to accomplish a reasonable end." *Safeco Ins. Co. of Am., Inc. v. McKenna*, 1977-NMSC-053, ¶ 18, 90 N.M. 516. The words of the contract are given their ordinary meaning, and the contract must be construed as a whole, including its declarations, endorsements, and any other attachments. *See Rummel v. Lexington Ins. Co.*, 1997-NMSC-041, ¶ 20, 123 N.M. 752 (internal quotations and citations omitted).

"The court's duty is confined to interpreting the contract that the parties made for themselves, and absent any ambiguity, the court may not alter or fabricate a new agreement for the

parties." *Gallegos,* 2002-NMSC-012, ¶ 30 (quoting *CC Housing Corp. v. Ryder Truck Rental, Inc.,* 1987-NMSC-117, ¶ 6, 106 N.M. 577). "Absent ambiguity, provisions of a contract need only be applied, rather than construed or interpreted." *Richardson v. Farmers Ins. Co. of Am.*, 1991-NMSC-052, ¶ 7, 112 N.M. 73 (citing *McKinney v. Davis*, 1972-NMSC-077, 84 N.M. 352). Where insurance policies are unambiguous, courts will construe them "in their usual and ordinary sense," *Slack v. Robinson*, 2003-NMSC-083, ¶ 7, 134 N.M. 6, 71 P.3d 514, 517, and "enforce [them] as written," *Truck Ins. Exch. v. Gagnon*, 2001-NMCA-092, ¶ 7, 131 N.M. 151, 33 P.3d 901, 903.

In *Mark V, Inc. v. Mellekas,* the Supreme Court of New Mexico summarized the law in New Mexico concerning the interpretation of "ambiguous or unclear language in written agreements:"

> An ambiguity exists in an agreement when the parties' expressions of mutual assent lack clarity. *C.R. Anthony* [*v. Loretto Mall Partners*], 112 N.M. [504,] 509 n. 2, 817 P.2d [238,] 243 n. 2 [ (1991) ]. The question whether an agreement contains an ambiguity is a matter of law to be decided by the trial court. *Levenson v. Mobley,* 106 N.M. 399, 401, 744 P.2d 174, 176 (1987). The court may consider collateral evidence of the circumstances surrounding the execution of the agreement in determining whether the language of the agreement is unclear. *C.R. Anthony,* 112 N.M. at 508–09, 817 P.2d at 242–43. If the evidence presented is so plain that no reasonable person could hold any way but one, then the court may interpret the meaning as a matter of law. *Id.* at 510, 817 P.2d at 244. If the court determines that the contract is reasonably and fairly susceptible of different constructions, an ambiguity exists. *Vickers v. North Am. Land Dev., Inc.,* 94 N.M. 65, 68, 607 P.2d 603, 606 (1980). At that point, if the proffered evidence of surrounding facts and circumstances is in dispute, turns on witness credibility, or is susceptible of conflicting inferences, the meaning must be resolved by the appropriate fact finder, *C.R. Anthony,* 112 N.M. at 510, 817 P.2d at 244.
>
> Once the agreement is found to be ambiguous, the meaning to be assigned the unclear terms is a question of fact. *Segura v. Molycorp, Inc.,* 97 N.M. 13, 18, 636 P.2d 284, 289 (1981). However, in the event the parties do not offer evidence of the facts and circumstances surrounding execution of the agreement and leading to conflicting interpretations as to its meaning, the court may resolve any ambiguity as a matter of law by interpreting the contract using accepted canons of contract construction and traditional rules of grammar and punctuation. *C.R. Anthony,* 112 N.M. at 510 n. 5, 817 P.2d at 244 n. 5. The factual issues, if any, presented by an ambiguity must be resolved by the jury (or by the judge as fact finder in the case of

> a bench trial) with the benefit of a full evidentiary hearing prior to deciding breach and damages. *Id.* at 510, 817 P.2d at 244. In order to determine the meaning of the ambiguous terms, the fact finder may consider extrinsic evidence of the language and conduct of the parties and the circumstances surrounding the agreement, as well as oral evidence of the parties' intent. *American Bank of Commerce v. M & G Builders, Ltd.,* 92 N.M. 250, 252, 586 P.2d 1079, 1081 (1978).

1993-NMSC-001, ¶¶ 12-13, 114 N.M. 778.

### III. Estoppel and Waiver

Under New Mexico law, an "insurer may be estopped from raising the affirmative defense of a time-to-sue provision." *Green v. General Accident Ins. Co. of Am.*, 1987-NMSC-111, ¶ 9, 106 N.M. 523. "Estoppel arises when an individual has been induced by the conduct of another to do, or forbear from doing, something he would or would not have done but for such conduct." *Id.* "The acts and conduct generally held to constitute a waiver of a time-to-sue provision are those acts which would lull the insured into reasonably believing that its claim would be settled without suit." *Id.*

## DISCUSSION

### I. The scope of the Policy's time-to-sue provision is ambiguous as a matter of law, and a jury must resolve the ambiguity.

Defendant moves for summary judgment on all of Plaintiff's claims. Defendant argues that Plaintiff's claims are barred by the "Time-to-Sue" provision in the Policy.[2] Doc. 32 at 4. This

---

[2] In Defendant's Motion, Defendant refers to a "Suit Against Us" provision found at "Ex. A, Attach. 1 to Jones Declaration." Doc. 24 at 5. Exhibit A-1 appears to be the entire Policy. The Court searched for the specific language quoted by Defendant for the "Suit Against Us" provision and found it in the "Electronic Data Processing Equipment Coverage Part." Doc. 24-3 at 304. Plaintiff also points out that this "Suit Against Us" provision is found in the "Electronic Data Processing Equipment Coverage Part." Doc. 28 at 15.

In Defendant's Reply, it states: "To the extend that the original Motion for Summary Judgment cited the incorrect policy provision, the error was only clerical in nature." Doc. 32 at 4, n.1. Defendant argues the "Time-to-Sue" provision that bars Plaintiff's claims is instead found in the Commercial Property Conditions. Doc. 32 at 4 (citing Def.'s Ex. A-1 at pages 212-213).

11

provision states that legal action against Defendant must be brought within two years after the date on which the direct loss or damage occurred. *Id.* Defendant argues that the loss occurred on May 25, 2019, but Plaintiff did not file suit until July 21, 2021 – nearly two months after the two-year deadline mandated by the Policy. Defendant argues Plaintiff's failure to timely bring suit is fatal to all of Plaintiff's claims. Plaintiff argues that there are material fact issues involving the time-to-sue provision and whether any such provision applies to Plaintiff's business income loss claim. Specifically, Plaintiff argues that the time-to-sue provision is not included in the Expanded Business Income Coverage that is in dispute in this case.

Plaintiff goes on to argue that the basic principles of contract construction indicate that the time-to-sue provision cited by Defendant does not apply to Plaintiff's lost business income claim. This is because there are seven references to "Suit Against Us" or "Legal Action Against Us" in the Policy in seven different coverage parts, but notably, the Expanded Business Income Coverage part of the Policy does not include any time-to-sue provision. Yet Defendant argues that other sections of the Policy, particularly the Commercial Property Conditions form, includes a "Legal Action Against Us" section with a two-year time limit, and the Commercial Property Conditions form says it is "subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in the Commercial Property Coverage Forms." Doc. 32 at 6. Defendant then refers to a Merriam Webster definition of "subject to," which includes the definition of "dependent on something else to happen or be true." *Id.* at 7. Defendant then argues that the "subject to" provision is "dependent upon the Additional Conditions in Commercial Property Coverage Forms – which means the Commercial Policy Conditions apply to all the Commercial Policy Coverage Forms, including the Business Income and Extra Expense Form issued to Apex." *Id.*

Here, the Court finds as a matter of law that the scope of the Policy's time-to-sue provision is ambiguous. The Court is mindful that the "clauses in the policy must be construed as intended to be a complete and harmonious instrument designed to accomplish a reasonable end." *Safeco Ins. Co. of Am., Inc.*, 1977-NMSC-053, ¶ 18. However, having carefully reviewed the entire Policy and the parties' arguments, the Court finds the scope of the time-to-sue provision is "reasonably and fairly susceptible of different constructions." *Mark V, Inc.*, 1993-NMSC-001, ¶ 12. The parties have presented different constructions of the provision that each appear to be reasonable. Consequently, the Court finds as a matter of law that the time-to-sue provision is ambiguous. Since this provision is subject to conflicting interpretations, the scope of the time-to-sue provision must be resolved by a jury. Summary judgment is, therefore, inappropriate.

**II.     Remaining Issues**

Even if the Court were to find that the time-to-sue provision applies to Plaintiff's business income loss claim, the question of whether waiver or estoppel would prevent Defendant from asserting the two-year time limit is a question of fact that must also be resolved by a jury. Under New Mexico law, the question is whether Defendant's acts and conduct lulled Plaintiff into reasonably believing that its claim would be settled without suit. *See Green*, 1987-NMSC-111, ¶ 10. "The question of waiver or estoppel as to a contractual limitation of time provision in an insurance policy is one for the jury." Steven Plitt, et al., *Couch on Insurance* § 238:19 (3d ed. 2023). Therefore, the Court finds that a jury must determine the issue of whether Defendant lulled Plaintiff into reasonably believing that its claim would be settled without suit.

Finally, Defendant argues that Plaintiff's extra-contractual claims, such as its claims for bad faith and attorneys' fees, should be dismissed because these types of claims cannot arise unless there is a contractual duty to pay under the insurance policy and Defendant argues, because Plaintiff failed to timely file suit, there is no contractual duty to pay. *See* Doc. 24 at 14. Defendant

also argues that because Plaintiff has no viable breach of contract action, there should be no award of prejudgment interest. *Id.*

Because the Court has already found there is a genuine dispute of material fact regarding the scope of the time-to-sue provision, and thus the viability of the breach of contract claim, it need not address these arguments at this time. Defendant may raise these arguments, if appropriate, once a jury has determined the scope of the time-to-sue provision and the questions of waiver and estoppel.

## CONCLUSION

**IT IS THEREFORE ORDERED that** Defendant Security National Insurance Company's Motion for Summary Judgment (Doc. 24) is **DENIED** as explained herein.

**IT IS SO ORDERED.**

**DAVID HERRERA URIAS**
UNITED STATES DISTRICT JUDGE